UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDGAR MARTIN HURLBURT, JR.,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-03-0665** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **RAYMOND LAWLER,**[1] ***et al.,*** | : | |
| | : | |
| **Respondents** | : | |

**M E M O R A N D U M**

Edgar Martin Hurlburt, Jr., an inmate confined at the State Correctional

Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon"), filed this *pro se*

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Named as

Respondents are SCI-Huntingdon Superintendent Raymond Lawler, the District

Attorney for Snyder County, Pennsylvania, and the Attorney General for the

Commonwealth of Pennsylvania.  In this memorandum, the court addresses whether

Hurlburt's claims were properly exhausted in state court or procedurally defaulted.

Because the court concludes that some claims were exhausted, Respondents will be

---

[1]  When this petition was first filed, Kenneth Kyler was the superintendent of
SCI-Huntingdon and was correctly named in the petition.  (Doc. 1.)  Currently, the
Superintendent of SCI-Huntingdon is Raymond Lawler.  Accordingly, the latter is
substituted as party to this case.  *See* Fed. R. Civ. P. 25(d).

ordered to respond on the merits.  Hurlburt's unexhausted and procedurally defaulted

claims will be dismissed with prejudice.


**I.**     **Background**

    **A.**     **Procedural History in State Court**

        **1.**     **Guilty Plea**

    The following facts are extracted from the undisputed record.  Hurlburt was

charged with criminal homicide, robbery, aggravated assault, theft by unlawful taking

and two counts of criminal conspiracy in the Court of Common Pleas for Snyder

County, Pennsylvania ("trial court" or "Snyder County court").  The charges stemmed

from the murder of 78-year-old Martin Beachy which occurred on May 23, 1993.

    On February 16, 1994, Hurlburt entered a plea of guilty to a charge of first-

degree murder, in exchange for the Commonwealth's agreement to withdraw the

aggravating circumstances in support of the death penalty and to *nol pros* the

remaining charges of robbery, aggravated assault, theft by unlawful taking, and

criminal conspiracy.  Hurlburt, who was represented by Snyder County Public

Defender Ann Shapiro and court-appointed co-counsel Mark Lemon, executed a

written guilty plea colloquy and a guilty plea hearing was conducted by the Court of

Common Pleas, the Honorable P.J. Woelful presiding.  On the same day that he

2

entered his plea,  Hurlburt was sentenced to serve a term of life imprisonment without parole.

### 2.    The PCRA Process Begins

Although Hurlburt did not file a direct appeal, he did seek collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 *et seq.*, on April 28, 1994.  (Doc. 18 at 6.)  On May 2, 1994, the PCRA court (Judge Woelful presiding) appointed PCRA counsel Randall Zimmerman and issued an order that the Commonwealth show cause, within thirty days, why an evidentiary hearing should not be granted.  The Commonwealth did not respond. (*Id.*)  Zimmerman did nothing to establish a time for an evidentiary hearing because, it appears, he and Hurlburt were discussing whether and how to amend Hurlburt's PCRA petition.  (*See generally* Doc. 15 Ex. 2.)  In May 1998, PCRA counsel sent Hurlburt a proposed amended petition for his review and signature.  (*Id.* at 30-31.)

The next document in the chronology is dated July 10, 2000, when Hurlburt wrote to Zimmerman stating that he had returned the signed amended petition but had not heard from Zimmerman since that time.  (*Id.* at 32.)  Zimmerman responded months later suggesting that they meet again to discuss yet another proposed amended petition.  (*Id.* at 34-35.)  Finally, on November 21, 2001, although Zimmerman was still noted as his attorney, Hurlburt filed a *pro se* amendment to his original PCRA

3

petition.  (Doc. 18 at 7.)  The PCRA court rejected Hurlburt's submission because he was represented by counsel.  (*Id.*)  Hurlburt filed a *pro se* appeal of that decision and filed various *pro se* petitions with the Superior Court of Pennsylvania and the Supreme Court of Pennsylvania.  (*Id.* at 7-8.)  All of his petitions to the appellate courts were denied.  (*Id.*)

In July 2002, Hurlburt applied to the PCRA court to represent himself in his PCRA action.  (*Id.* at 8.)  Instead of granting the relief requested, in August 2002, the court terminated Zimmerman and appointed Stuart Cilo as Hurlburt's PCRA attorney. (*Id.*)  In March 2003, Hurlburt again requested that he be allowed to represent himself and requested release from prison because of the delay in resolving his PCRA action. (*Id.*)  After a hearing on both issues in May 2003, the PCRA court denied both motions.  (*Id.* at 9.)  At the same time, the PCRA court ordered an evidentiary hearing.

### 3. Arguments and Decision in the PCRA Court

The evidentiary hearing was held on July 17, 2003 and August 7, 2003. Evidence was taken on ineffective assistance of trial counsel and drew from Hurlburt's original PCRA petition and the *pro se* amended petition rejected by the PCRA court, but only to the extent that the amended petition alleged ineffective assistance of counsel.  (Doc. 36 Ex. 6 at 4; Doc. 28 Ex. B at 1; Doc. 36 Ex. 6 at 6.)

The original petition stated a single ground for relief:  ineffective assistance of trial counsel, particularly Public Defender Ann Shapiro.  (Doc. 36 Ex. 6 at 54-60.) Hurlburt claimed Shapiro was ineffective because: 1) her case load was too heavy to assist him effectively; 2) she was not sufficiently experienced to navigate a murder case, never having tried one before; 3) she did not explain the law to him; 4) she did not pursue an effective pretrial strategy; and 5) she did not apprise Hurlburt of the proceedings.  (*Id.* at 56.)

Hurlburt's *pro se* amended PCRA petition was far broader in scope.  He argued:  1) ineffective assistance of plea counsel; 2) constitutional errors made by the trial court; 3) prosecutorial misconduct; and 4) constructive denial of counsel.  (Doc. 15 Ex. 5.)  The grounds for Hurlburt's claim of ineffective assistance of counsel were: 1) failure to conduct adequate pretrial investigation; 2) permitting a guilty plea without having received the results of the pretrial investigation; 3) failing to advise the trial court of a conflict of interest under which Skip Gochenour, investigator for the defense, was operating; 4) advising Hurlburt that he would be eligible for commutation of sentence after serving fifteen to twenty years; 5) permitting the guilty plea after the trial court failed to instruct Hurlburt as to the elements of first-, second-, and third-degree murder and voluntary and involuntary manslaughter; 6) making material misstatements to the trial court about her investigation into Hurlburt's

defense and her communication with Hurlburt about his defense; 7) permitting the

guilty plea after "proscribed inducements" by the prosecutor; 8) failing to file a

motion to withdraw the guilty plea; and 9) failing to preserve meritorious issues for

appeal; and 10) failing to file a direct appeal.  (*Id.* at 4.)

Hurlburt's PCRA brief, filed by Cilo, focused solely on ineffective assistance

of trial counsel.  Certain arguments in support thereof were made contingent on the

PCRA court's credibility finding; the remaining two arguments were based in the law.

The credibility arguments focused on Hurlburt's testimony, all of which was

contradicted by all testifying counsel.  Hurlburt testified that 1) he was offered the

ability to plead to third-degree murder, which he rejected because he thought third-

degree murder was worse than first-degree murder; 2) Gochenour instructed Hurlburt

to cease taking his medication before the guilty plea so that he could truthfully state

that he was not on any medication; 3) Gochenour instructed Hurlburt to answer all

questions at the guilty plea colloquy in such a way that the plea would be accepted,

without regard for the truth; 4) the prosecuting attorney promised Hurlburt a

"commutation letter" as an incentive for his guilty plea; 5) Shapiro had been

contacted for representation by Hurlburt's co-defendant and thus operated under a

conflict of interest while representing him; 6) Gochenour had been contacted by

counsel for Hurlburt's co-defendant to act as an investigator for her, and thus was

6

operating under a conflict of interest while investigating Hurlburt's defense; and 7)

Gochenour brought counsel for Hurlburt's co-defendant to see him in prison prior to

the entry of Hurlburt's guilty plea.  (Doc. 28 Ex. B at 4-6.)  The PCRA court found

Hurlburt's testimony regarding these matters not credible.  Shapiro, Lemon, and

Gochenour testified that none of these events had occurred, and their version of

events was adopted. (*See generally* Doc. 36 Ex. 2.)

In addition to cursory treatment of the questions of credibility, the brief in

support of Hurlburt's PCRA petition argued that Shapiro and Lemon were not

sufficiently experienced or qualified to represent Hurlburt in his capital homicide

defense.  By their own admissions during the PCRA hearing, they did not meet the

Philadelphia County Rules for Appointment of Counsel in a capital case

("Philadelphia Standards").  Their work for Hurlburt reflected their ineffectiveness,

he argued, in light of their performance during the pretrial hearing on their motion to

suppress evidence.  Hurlburt argued that his inculpatory statements to Tennessee

police officers were made under the influence of drugs and, therefore, should have

been suppressed.  At the pretrial suppression hearing, counsel did not call Hurlburt to

testify that he had used drugs to contradict the testimony of the police officers that he

was not under the influence.  "Without some testimony regarding drug use, it would

be absolutely impossible for the court to make a determination that the statements

may have been tainted by [Hurlburt's] drug use." (Doc. 28 Ex. B at 9.)  Further, trial counsel did not wait for the trial court to decide the suppression issue before advising Hurlburt to plead guilty.

The PCRA court found that Shapiro and Lemon were sufficiently experienced and qualified to represent Hurlburt in Snyder County.  Both attorneys were criminal defense litigators.  Shapiro had practiced since 1990, after having clerked for a federal district court, the Snyder County court, and the Pennsylvania Superior Court. Lemon had been in practice since 1986.  The court concluded that the Philadelphia County Rules for Appointment of Counsel in a capital case were not dispositive in Snyder County.  Homicides were relatively infrequent in Snyder County, thus likely precluding local attorneys from appointment to a homicide case if the Philadelphia standards were adopted.  (Doc. 36 Ex. 2 at 5.)

The Philadelphia standards not being dispositive, the PCRA court looked to trial counsel's actual work on the case to determine whether they rendered effective assistance.  As an initial matter, the PCRA court determined that trial counsel were not "overwhelmed by the demands of their professional responsibilities," as Hurlburt had argued.  (*Id.*)  The court found that Shapiro and Lemon rendered appropriate advice and pursued a litigation strategy designed to serve Hurlburt's interests.  (*Id.* at 5-7.)  The court related the numerous motions filed by counsel, including petitions for

8

the appointment of a criminal investigator, a forensic pathologist, a forensic psychologist, a hair analysis expert, and a blood spatter expert.  All petitions were granted.  Counsel also filed an omnibus pretrial motion, along with motions in limine to prohibit or limit the admission of specific items of physical evidence and to prohibit the death qualification of potential jurors.  At the time appointed for a hearing on many of the pretrial motions however, the prosecutor and trial counsel confirmed that Hurlburt had entered a plea agreement with the government.  He wished to plead guilty and be sentenced on that day and time.  (*See* Doc. 15 Ex. 4 at 2-4.)  The plea was taken and the sentence handed down.

The PCRA court found that trial counsel were not ineffective for not having postponed Hurlburt's plea until after a hearing on the outstanding motions and further briefing.  (Doc. 36 Ex. 2 at 5.)  The court noted that "all requests and motions were appropriate given the nature and factual circumstances" of the case.  (*Id.*)  It further observed that Hurlburt had failed to prove by a preponderance of the evidence that the outstanding motions would have been successful in strengthening his case or weakening the Commonwealth's case against him.  (*Id.* at 8.)  To the contrary, the PCRA court concluded that plea counsel chose a course designed to serve Hurlburt's interests.  They were required to inform him of the plea offer to first-degree murder with life imprisonment.  Shapiro conveyed her concern about the physical evidence

against the defense and concluded, based on the reports of the forensic psychologist, that neither insanity nor diminished capacity were available as defenses.  Hurlburt's intoxication and drug use would not negate the intent element required for first-degree murder, again in light of the physical evidence.  Further, Hurlburt had made several inculpatory statements to police officers in Tennessee and had led the Pennsylvania state police to the spot where the murder weapons could be found.  Because of all of this, the PCRA court found that plea counsel followed a prudent path to remove the death penalty from consideration by advising a guilty plea to first-degree murder with life imprisonment.  (Doc. 36 Ex. 2 at 9.)

### 4.    Arguments and Decision in the Superior Court

Cilo remained Hurlburt's appointed counsel for the appeal of the PCRA court's decision.  On October 25, 2004, Cilo filed the brief in support of that appeal.  The only issue Cilo found of sufficient merit on appeal was whether Shapiro and Lemon "were of sufficient education and experience to be qualified to represent [Hurlburt] in a capital homicide case."  (Doc. 36 Ex. 6 at 4.)  The brief states that "undersigned counsel believes and avers that all of the allegations but for competency qualifications of appointed counsel set forth in the Petition for Post Conviction Relief filed by Hurlburt are of insufficient merit to pursue in this appeal."  (*Id.* at 14-15.)

Hurlburt filed a far more expansive *pro se* brief in support of his appeal on the same date.  (Doc. 36 Ex. 5.)  The Superior Court refused to consider the *pro se* brief because he was represented by counsel.  The court cited *Commonwealth v. Ellis*, 626 A.2d 1137, 1141 (Pa. 1993), for the proposition that "appellants in criminal cases possess no constitutional right to hybrid representation."  (Doc. 45 Ex. 1 at 3 n.3.)

In his counseled brief, Hurlburt argued that "reviewing trial counsel's performance is inappropriate" because "if counsel lacks sufficient experience, education, training or ability [in litigating a capital homicide case], then performance does not matter."  (Doc. 36 Ex. 6 at 16.)  If neither Shapiro nor Lemon met the minimum standard for representation in a capital homicide case in 1993, "it is obvious that any advice they presented to Hurlburt to enter a plea must be considered substandard."  (*Id.* at 22.)

Hurlburt referred to the Philadelphia Standards and introduced argument based on the Pennsylvania Superior Court's then-new Rule 801: Qualification for Defense Counsel in Capital Cases.  He noted that neither Shapiro nor Lemon met the standards in Philadelphia or in Rule 801.  He conceded, however, that "case law in Pennsylvania regarding standards or qualifications in a capital case [was] non-existent" at the time of Hurlburt's arrest and subsequent guilty plea.  (*Id.* at 18.)  Hurlburt also conceded that plea counsel filed, and were granted, reasonable pretrial

11

motions appropriate to the case—but their post-appointment success, to Hurlburt, did not negate the fact that they were not competent by their education and experience to represent him in a capital homicide case.  (Doc. 36 Ex. 6 at 19.)

Hurlburt again illustrated their ineffectiveness by their failure to call him to the stand during the hearing on the motion to suppress statements made to the Tennessee police.  (*Id.* at 20.)  Neither Shapiro nor Lemon could provide a reason for not having called him to testify, yet he was the sole witness who could have provided a basis for a finding that he had been under the influence of drugs at the time of the statement. Another illustration of their ineffectiveness was that they advised Hurlburt to plead guilty before the trial court ruled on the suppression motion.  (*Id.* at 20-21.)  Their opinion that he should plead, in light of the evidence gathered by the Commonwealth and the possibility of the death penalty, was "formed by their lack of education and experience in capital homicide cases and was therefore at a minimum, less than what was required [of capital counsel] at the time."  (*Id.* at 21.)

The Superior Court noted that Hurlburt's primary argument was that "Lemon and Shapiro were not qualified to represent [him] in the capital case."  (Doc. 45 Ex. 1 at 3.)  Supporting examples of their ineffectiveness were that they "did not properly litigate his pre-trial suppression [m]otion, and improperly advised him to accept a plea bargain."  (*Id.* at 3-4.)  After a brief description of the elements of an ineffective

12

assistance of counsel claim, the Superior Court concluded: "In its Opinion denying

Hurlburt's PCRA Petition, the PCRA court extensively addressed Hurlburt's claim

and deemed it without merit.  We adopt the PCRA court's analysis and affirm on the

bases of its Opinion with regard to this claim.  *See* PCRA Court Opinion, 6/7/04, at 2-

9.  Order affirmed."  (*Id.* at 4.)

###     B.     <u>Procedural History in This Court</u>

Hurlburt filed his original habeas petition under 28 U.S.C. § 2254 on April 21,

2003.  (Doc. 1.)  He raised numerous issues, including 1) ineffective assistance by

trial counsel; 2) trial court error; 3) ineffective assistance by PCRA counsel; 4) denial

of due process by the Snyder County Prothonotary's office; 5) Gochenour's conflict

of interest; and 6) claims relating to the inordinate delay in the resolution of his

petition under the PCRA.  (Doc. 1 at 14-17.)  He requested appointed counsel (Doc.

2), which was denied (Doc. 9).  The court sent a *Miller*/*Mason* order on May 5, 2003.

(Doc. 7.)  Hurlburt did not withdraw his habeas petition or seek to amend it.

In his habeas petition, he claimed ineffective assistance by both Shapiro and

Lemon.  His statements in support of his ineffective assistance of counsel claim

against Shapiro were that she 1) did not withdraw from Hurlburt's case; 2) prejudiced

his Rule 1100 rights; 3) failed to conduct an adequate pretrial investigation; 4)

permitted his guilty plea without having received reports from appointed experts; 5)

13

failed to adequately advise Hurlburt at the first plea offer; 6) failed to investigate his

psychological history; 7) failed to advise him of the elements required to be found

guilty of first-degree murder; 8) failed to advise him of the prerequisites to obtaining

commutation of his sentence; 9) permitted the prosecutor to unilaterally change the

plea agreement; 10) waived the ten-day window within which Hurlburt could have

withdrawn his guilty plea; 11) failed to notify the trial court that Gochenour was

operating under a conflict of interest; 12) failed to notify the trial court that Hurlburt

was under the influence of psychotropic drugs; 13) instructed Hurlburt to lie to the

trial court; 14) relieved the Commonwealth of its duty to prove his guilt beyond a

reasonable doubt; 15) permitted the trial court to accept his guilty plea without a

factual basis for it; 16) relieved the trial court of its duty to inform Hurlburt of the

specific elements of first-degree murder; 17) relieved the trial court of its duty to

advise Hurlburt on matters concerning a jury at sentencing; 18) made materially false

statements to the trial court; 19) failed to file a post-verdict motion to withdraw

Hurlburt's guilty plea; 20) failed to preserve meritorious issues for appeal; 21) failed

to file a promised direct appeal; and 22) permitted herself to be questioned by the

prosecutor about Hurlburt's case after Hurlburt was sentenced.  (Doc. 1 at 14.)

　　　As to Lemon, Hurlburt claimed that he rendered ineffective assistance of

counsel in that he: 1) failed to conduct an independent investigation of Hurlburt's

defense; 2) failed to protect Hurlburt's federal and state constitutional rights; 3) "add[ed] his imprimat[ur] to lead counsel and case prosecutor's complicity to commit fraud upon the trial court, and commutation advice" to Hurlburt; and 4) permitted Hurlburt to plead guilty while under the influence of psychotropic drugs. (*Id.* at 16-17.)

The PCRA process in state court was not yet complete at the time Hurlburt filed his habeas petition in this court.  Accordingly, Respondents argued that all of his arguments were unexhausted, regardless of whether the arguments were made in his PCRA petition or his amended petition.  (*See* Doc. 14 at 5.)  Even were this court to excuse exhaustion due to delay and permit Hurlburt's habeas claims for ineffective assistance of counsel to go forward, Respondents argued that Hurlburt had waived the arguments in support of that claim to the extent that he had not raised the same arguments in his original and amended PCRA petition.  (Doc. 13 at 8.)  Respondents denied that Hurlburt's new arguments supporting his ineffective assistance of counsel claim were cognizable in his habeas proceeding because he had not presented them to the PCRA court.  With respect to Hurlburt's claims other than ineffective assistance of counsel, Respondents argued that he had not raised them before the PCRA court and therefore they were unexhausted.

Hurlburt filed a traverse, accompanied by exhibits.  (Docs. 18-19.)  The original petition was ripe for disposition on September 8, 2003.  Three months later, Hurlburt filed a motion to expand the record, to file a supplemental traverse, and to amend his habeas petition.  (Doc. 20.)  He also moved to compel Respondents to file the complete state court record with this court.  (Doc. 21.)  Two months after that, Hurlburt filed a brief in support of the motions and supporting exhibits.  (Docs. 22-23.)  In August 2004, Hurlburt filed a motion for declaratory judgment, with a supporting brief and exhibits.  (Docs. 25, 27-28.)  He also filed a motion for bail pending the outcome of his habeas proceedings.  (Doc. 29.)

By memorandum and order dated September 30, 2004, this court declined to dismiss Hurlburt's habeas petition, as a whole, for failure to exhaust.  (Doc. 31 at 3.)  Noting that his PCRA process had been pending for nine years and that exhaustion may be excused by such inordinate delay, the court granted leave to file an amended habeas petition.  Hurlburt's amended petition was to contain only those grounds for relief that were preserved in his amended PCRA petition.  (*Id.* at 7.)  Hurlburt was not instructed, however, that his amended petition was to be whole and complete in its own right, and not simply a supplement to his original petition in this court.  His motions to supplement the record, to otherwise amend documents, for declaratory judgment, and for bail pending the outcome of his habeas proceedings were denied.

16

Respondents were ordered to serve Hurlburt with copies of all briefs filed in the PCRA proceeding.

Hurlburt filed an amended habeas petition on November 1, 2004.  (Doc. 32.) The amended petition stated that Hurlburt's "PCRA issues are set forth at pages 4-23 [ineffective assistance of counsel], 23-27 [trial court errors], 27-28 [prosecutorial misconduct], 38-44 [prosecutorial misconduct], 44-47 [ineffective assistance of counsel], [and] 47-48 [conclusion] of the [amended] PCRA [petition]."  (Doc. 32 at 3.)  This statement appears to be Hurlburt's attempt to incorporate his amended PCRA petition by reference into his amended habeas petition.  The only argument from the amended PCRA petition that he developed in his amended habeas petition is that Shapiro rendered ineffective assistance of counsel because she was operating under a conflict of interest as a result of her having been a law clerk to the trial court and PCRA court.  (*See id.* at 6.)  The remainder of Hurlburt's amended habeas petition referred to the alleged ineffective assistance of PCRA counsel, and other matters not addressed in his amended PCRA petition.

Respondents argued, on November 19, 2004, that the petition should be dismissed for failure to exhaust state court remedies.  (*See generally* Doc. 36.)  They also included a general statement attempting to incorporate into their answer to the amended habeas petition their answer to the original habeas petition.  (Doc. 35 ¶ 7.)

The argument articulated in their response to the amended petition was that Hurlburt himself caused the delay by failing to file an amended PCRA petition until 2001, and then filing numerous motions with Pennsylvania appellate courts before the PCRA court reached a decision below.  Accordingly, the "inordinate delay" in reaching a conclusion of his PCRA process was not attributable to the Commonwealth, and exhaustion should not be excused on that basis.

Hurlburt filed his traverse on December 6, 2004.  (Doc. 38.)  On May 17, 2005, he moved to strike Respondents' answer to his amended petition and their supporting brief for failure to follow federal rules of procedure and for failure to abide by a court order.  (Doc. 42.)  He also moved to compel Respondents to file a complete state court record in this court.  (Doc. 43.)  He filed a joint brief in support of both motions. (Doc. 44.)  Respondents did not file a brief in opposition to these motions, or otherwise contest them in any way.

Without addressing Hurlburt's outstanding motions, this court determined that certain of his claims were exhausted, but others were not.  (Doc. 46.)  Instead of ruling on a mixed petition, the court dismissed Hurlburt's petition without prejudice to file a new § 2254 petition after the conclusion of his PCRA appeal, which was then in progress.  Hurlburt took an appeal of this decision.  On May 11, 2006, the Third Circuit issued an order granting his request for a certificate of appealability and

remanded the case to this court to determine "whether any unexhausted claims in the habeas petition should be dismissed because they are now procedurally barred." (Doc. 60.)  "If all claims that may not be considered exhausted are procedurally barred, the District Court must reach the merits of any exhausted claims."  (*Id.*)

Between the judgment of the court of appeals, issued on April 19, 2006 (Doc. 57) and the mandate from that court, issued on May 11, 2006 (Doc. 60), Hurlburt filed: a motion for a ruling on his prior motions to strike Respondent's answer to his amended petition and supporting brief; a motion for an evidentiary hearing; a motion for reconsideration of appointment of counsel; and a single brief in support of all three motions (Doc. 59).

Following remand, this court issued an order on May 16, 2006, directing Respondents to file a brief "addressing which claims raised in Hurlburt's habeas petition are unexhausted and which, if any, unexhausted claims are procedurally barred."  (Doc. 61 at 4.)  Hurlburt was granted permission to file a reply brief.  Both briefs were filed.

After those documents were submitted, this court consolidated *Hurlburt v. Kyler, et al.*, No. 1:CV-06-0704 into the captioned case.  The former case was Hurlburt's second § 2254 habeas petition, filed in this court on April 5, 2006.  His claim for relief therein was ineffective assistance of counsel during both his pretrial

proceedings and his PCRA proceedings.  By order of December 19, 2006, this court ordered the habeas petition filed at Civil No. 06-0704 to be consolidated into the instant case, No. 03-0665.  (Doc. 64.)  Service of the habeas petition at Civil No. 06-0704 was not ordered.

The matter is ripe for consideration, as are Hurlburt's outstanding motions. Arguments in Hurlburt's original habeas petition, amended habeas petition, and his consolidated habeas petition from Civil No. 06-0704 will be addressed.  Both Hurlburt and Respondents, however, are admonished that Local Rule 7.8 in the Middle District of Pennsylvania prohibits incorporation of documents by reference. Local Rule 7.8 will be strictly enforced going forward.

## II.   **Discussion**

The court will begin by evaluating Hurlburt's outstanding motions, then will address certain claims not cognizable under § 2254, and finally will proceed to the questions of exhaustion and procedural default.

### A.   **Hurlburt's Motions**

Hurlburt's outstanding motions are 1) to strike Respondents' answer to his amended petition and their supporting brief; 2) to compel Respondents to file a

complete state court record; 3) for an evidentiary hearing; and 4) for reconsideration of appointment of counsel.  All of these motions will be denied.

Although unopposed by Respondents, Hurlburt's motion to strike Respondents' answer and supporting brief (Doc. 42) fails to set forth a viable basis which would warrant the relief requested.  Hurlburt's motion to compel Respondents to file a complete record of his state court proceedings (Doc. 43) is similarly without merit.  A review of the extensive record of this action confirms that this court has been provided with copies of numerous transcripts, appellate briefs, and state court decisions relating to both Hurlburt's criminal proceedings in the Snyder County court of Common Pleas as well as his subsequent PCRA action before the Pennsylvania state courts.  Based upon the submission of those documents, this court is satisfied at the present time that it has all relevant state court records required to make a fair and informed decision regarding exhaustion and procedural default.  Both of these motions will be denied.

Hurlburt's motion for an evidentiary hearing (Doc. 59) will also be denied. The issue before the court—whether Hurlburt exhausted or procedurally defaulted some or all of the claims in his amended petition—is a matter of law.  Fact-finding is not required at this time.  This motion will be denied without prejudice to Hurlburt's opportunity to raise the issue when it is appropriate.

21

The motion for reconsideration of the decision denying Hurlburt appointed counsel (*id.*) is construed as a second motion seeking appointment of counsel.  This court denied appointed counsel on July 28, 2003, and since that time, Hurlburt has demonstrated a reasonable ability to litigate this action *pro se.*  Furthermore, Hurlburt's latest motion fails to set forth sufficient special circumstances or factors which would warrant the appointment of counsel.  *See Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153, 155-157 (3d Cir. 1993); *Gordon v. Gonzalez*, 232 F. App'x 153, 156 n.4 (3d Cir. 2007).  Consequently, for the reasons set forth in this court's order of July 28, 2003, Hurlburt's second motion for appointment of counsel will likewise be denied.

### B.   Claims Not Cognizable Under § 2254

Hurlburt asserts numerous counts of ineffectiveness of both attorneys who represented him during his PCRA process.  Relief on those counts is foreclosed by 28 U.S.C. § 2254(i), which states: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  Accordingly, even if PCRA counsel rendered ineffective assistance, Hurlburt would not be entitled to habeas relief as a result.  All of these claims will be dismissed with prejudice.

### C.     **Exhaustion of State Court Remedies and Procedural Default**

Respondents contend that all claims not raised in Hurlburt's amended PCRA petition have not been exhausted in state court and are therefore procedurally defaulted.  (*See* Doc. 62 at 3.)  Hurlburt counters that all of his present arguments were fairly presented to the appropriate Pennsylvania state courts during the course of his PCRA proceedings.  (*See* Doc. 63 at 2.)

### 1.     **Applicable Law**

Before any court examines the merits of a petition under 28 U.S.C. § 2254, certain threshold matters must be proved.  A petition under § 2254 may not be granted unless it appears that the applicant has exhausted state court remedies; or that there is an absence of available state corrective process; or there are existing circumstances which render the state process ineffective.  § 2254(b)(1).  The exhaustion requirement is not a mere formality.  It serves the interests of comity between the federal and state systems, by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights.  *See Crews v. Horn*, 360 F.3d 146, 151 (3d Cir. 2004).

To fully exhaust a claim, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S.

838, 845 (1999).  In Pennsylvania, a criminal or PCRA appellant must complete his appeal to the Superior Court to fulfill this requirement; filing a petition for review by the state Supreme Court is not necessary.  *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004).  At each stage, the federal claim must be fairly presented to the state courts; that is, the prisoner must put the state court on notice that he is bringing a federal claim.  *Nara v. Frank*, 488 F.3d 187, 198 (3d Cir. 2007).  A petitioner fairly presents his claim to the state courts by: 1) relying on pertinent federal cases; 2) relying on state cases that employ federal constitutional analysis in similar factual situations; 3) asserting the claim "in terms so particular as to call to mind a specific right protected by the Constitution;" or 4) alleging a pattern of facts well within the mainstream of constitutional litigation.  *Id.*  A federal court reviewing the state court proceedings looks to the substance of the claims presented, rather than their technical designations, to determine whether a federal claim was fairly presented to the state courts.  *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992).  A habeas petitioner bears the burden of establishing that his claims were fairly presented to the state courts.  *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).

A claim may also be exhausted if a state procedural rule prevents a petitioner from seeking further relief on that claims in state courts.  *Id.* at 160.  Because there is no available state corrective process, *see* § 2254(b)(1)(B)(i), such claim is exhausted

and deemed procedurally defaulted.  *Lines*, 208 F.3d at 160.  The procedural default

doctrine also prevents a federal court from reviewing arguments made to the state

courts, but rejected because the petitioner failed to follow state rules of procedure.

*See Nara*, 488 F.3d at 199.  The doctrine applies when the state procedural rule is

independent of the federal issue presented and adequate to support the judgment in

state court.  *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007).  "A state rule is

'adequate' for procedural default purposes if it was 'firmly established, readily

ascertainable, and regularly followed at the time of the purported default.'"  *Id.* at 366

(quoting *Szuchon v. Lehman*, 273 F.3d 299, 325 (3d Cir. 2001)).

> When a habeas petitioner
>
> has defaulted his federal claims in state court pursuant to an independent
> and adequate state procedural rule, federal habeas review of the claims is
> barred unless the prisoner can demonstrate cause for the default and
> actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that the failure to consider the claims will result in a
> fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Whether a petitioner can show

cause for the default turns on "whether [he] can show that some objective factor

external to the defense impeded counsel's efforts to comply with the State's

procedural rule" or that some other external thing, not fairly attributable to the

petitioner, prevented compliance.  *Id.* at 753 (quotation omitted).  A petitioner can

25

establish "prejudice" only by showing that the alleged errors worked to his actual and substantial disadvantage, infecting his entire proceeding with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982).  A petitioner demonstrates a fundamental miscarriage of justice when he presents new evidence of innocence that establishes that he did not commit the crime.  *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002).

> 2.   **Analysis**

The court begins by evaluating which of Hurlburt's habeas claims were properly exhausted in state courts.  He did not file a direct appeal, thus the issues raised before the PCRA court are the only issues that are eligible to be deemed exhausted.  Although Respondents concede that *all* claims in Hurlburt's amended PCRA petition are exhausted (*see* Doc. 62 at 3-4), this court cannot agree.  As an initial matter, the PCRA court "decline[d] to consider or recognize" Hurlburt's *pro se* amendment to his original PCRA petition because Hurlburt was represented by counsel.  (Doc. 18 at 7.)  On the record before this court, there is no order from the PCRA court rescinding that order or otherwise instating that document as an amended petition.  This court would be inclined treat all arguments raised therein as procedurally defaulted and ignore the document in its entirety.

It does appear, however, that the PCRA court addressed certain arguments made in the amended PCRA petition, but *only* to the extent that the arguments fell under the rubric of ineffective assistance.  For example, Hurlburt's original PCRA petition claimed ineffective assistance of counsel as to Ann Shapiro for the following reasons:  1) her case load was too heavy to assist him effectively; 2) she was not sufficiently experienced to navigate a murder case, never having tried one before; 3) she did not explain the law to him; 4) she did not pursue an effective pretrial strategy; and 5) she did not apprise Hurlburt of the proceedings.  (Doc. 36 Ex. 6 at 56.)  The PCRA court addressed each of these claims, adding nuances contributed by the amended PCRA petition.  The PCRA court also discussed the following claims, which were raised for the first time in the amended PCRA petition: 1) that counsel advised Hurlburt to lie to the court during his plea colloquy; 2) that Shapiro was operating under a conflict of interest due to contact with Hurlburt's co-defendant; and 3) that Gochenour was operating under a conflict of interest for the same reason.

The only claims presented on Hurlburt's counseled appeal of the PCRA court's decision was that of ineffective assistance of counsel—in particular, whether Shapiro and Lemon "were of sufficient education and experience to be qualified to represent [Hurlburt] in a capital homicide case" (Doc. 36 Ex. 6 at 7); whether they were constitutionally ineffective in their representation of Hurlburt on the pretrial motion

to suppress his statements to the Tennessee police; and whether they were constitutionally ineffective by counseling Hurlburt to accept a guilty plea at the time that they did.  This argument was fairly presented to the PCRA court and the Superior Court because the Sixth Amendment right to effective counsel is a well-known, mainstream federal constitutional argument.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the *Strickland* test.  *See*, *e.g.*, *Commonwealth v. Pierce*, 527 A.2d 973, 975-77 (Pa. 1987); *Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005).  Accordingly, this argument was properly exhausted by the PCRA process.

Although Hurlburt filed a *pro se* brief with numerous additional arguments, the Superior Court refused to consider his submission because he was represented by counsel.  That court applied the state procedural rule that when a litigant is represented by an attorney, the court will not consider his *pro se* filings.  This procedural rule was firmly established, readily ascertainable, and regularly followed at all times pertinent to Hurlburt's PCRA process.  *See Leyva*, 504 F.3d at 366.  It was clearly articulated in *Commonwealth v. Ellis*, 626 A.2d 1137, 1141 (Pa. 1993), and

reemphasized in *Commonwealth v. Rogers*, 645 A.2d 223, 224 (Pa. 1994).[2]  Further, Hurlburt's previous, numerous *pro se* filings to all Pennsylvania appellate courts were consistently and resoundingly rejected because he was represented by counsel.  All arguments made in Hurlburt's *pro se* brief, accordingly, are exhausted but procedurally defaulted.

All grounds for relief in his habeas petitions that were not fairly presented for a full round of appellate review are unexhausted and are in procedural default.  There is no corrective process under Pennsylvania law that could provide Hurlburt with relief upon his unexhausted claims.  He may not file another PCRA petition with his new claims because it would be untimely under the provisions of that Act, *see* 42 Pa. Cons. Stat. Ann. § 9545(b), and there is no other legal avenue open for redress.

Hurlburt has not established cause for the default and resultant prejudice or that failing to consider his defaulted claims on the merits would result in a miscarriage of justice.  His arguments as to cause focus on the alleged ineffective assistance of both counsel appointed to represent him in the PCRA proceeding.  (*See generally* Doc. 63.)  As a matter of law, ineffective assistance of post-conviction counsel is not  a

---

[2]  As related above, it appears that the PCRA court may have considered certain aspects of the stricken *pro se* amended PCRA petition in its memorandum and order denying relief.  This action does not make the procedural rule against *pro se* submissions by represented parties *on appeal* any less established, ascertainable, or regularly followed.

29

meritorious "cause of default" because there is no Sixth Amendment right to post-conviction counsel. *Coleman*, 501 U.S. at 754. A petitioner seeking post-conviction relief who is represented by an attorney, even a court-appointed attorney, is charged with that attorney's errors, inadvertence, or ignorance if those errors lead to procedural default. *Id.*; *see Murray v. Carrier*, 477 U.S. 478, 488 (1986). Without a showing of cause, a court need not examine prejudice.

Hurlburt also fails to establish that a miscarriage of justice would occur absent his petition being heard on the merits. He does not allege that there is any new evidence that would demonstrate his actual innocence of the crime for which he was convicted. *See Cristin*, 281 F.3d at 412. Because Hurlburt cannot demonstrate a reason to excuse the procedural default, none of his defaulted claims may be heard on the merits. The procedurally defaulted claims will be dismissed with prejudice.

## V.   **Conclusion**

The sole claim properly before this court is ineffective assistance of trial counsel. This claim is predicated upon 1) counsel's alleged lack of qualifications and experience; 2) their performance in litigating the motion to suppress inculpatory statements made to the police; and 3) their advice to plead guilty before the trial court ruled on outstanding pretrial motions. It is the only claim that was exhausted in state

30

court and that is not in procedural default.  All other claims will be dismissed with

prejudice.  The accompanying order will set forth the schedule for briefing on the

merits.

                               s/Sylvia H. Rambo
                               SYLVIA H. RAMBO
                               United States District Judge

Dated:  August 4, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| **EDGAR MARTIN HURLBURT, JR.,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-03-0665** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **RAYMOND LAWLER,** *et al.,* | : | |
| | : | |
| **Respondents** | : | |


# O R D E R

In accordance with the foregoing memorandum of law, **IT IS**

**HEREBY ORDERED THAT:**

1) Petitioner's motions 1) to strike Respondents' answer to his amended

petition and their supporting brief (Doc. 42); 2) to compel Respondents to file a

complete state court record (Doc. 53); 3) for an evidentiary hearing (Doc. 59); and

4) for reconsideration of appointment of counsel (*id.*) are **DENIED**.

2) The only cognizable claim in this action under 28 U.S.C. § 2254 is

whether Shapiro and Lemon rendered ineffective assistance of counsel.  The three

issues properly supporting this claim are 1) whether counsel were of sufficient

education and experience to be qualified to represent Hurlburt in a capital homicide

case; 2) their representation of Hurlburt on the pretrial motion to suppress his statements to the Tennessee police; and 3) their advice to Hurlburt to accept a guilty plea before the trial court ruled on outstanding motions.  All remaining claims are **DISMISSED WITH PREJUDICE**.

       3) Respondents shall file a brief addressing the merits of the claim stated in Paragraph 2 of this order no later than **August 22, 2008**.  Petitioner shall file a responsive brief no later than **September 8, 2008**.  Argument on any claim other than that set forth in Paragraph 2 of this order will be stricken.

       4) The parties shall abide by Local Rule 7.8.  All documents submitted to this court shall be whole and complete in themselves without reference to any other document, unless that document is an exhibit filed contemporaneously.

           s/Sylvia H. Rambo          
           SYLVIA H. RAMBO
           United States District Judge

Dated:  August 4, 2008.