IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EDGAR MARTIN HURLBURT, Jr.,** : | **CIVIL NO. 1:CV-03-0665** |
| Petitioner : | |
| : | **JUDGE SYLVIA H. RAMBO** |
| v. : | |
| : | |
| **RAYMOND LAWLER, et al.,** : | |
| Respondent : | |

# M E M O R A N D U M

Petitioner Edgar Martin Hurlburt, Jr., an inmate at the State Correctional Institution in Huntingdon, Pennsylvania, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hurlburt alleges ineffective assistance of plea counsel in violation of his rights under the Sixth Amendment to the United States Constitution. Pursuant to the court's Memorandum and Order dated August 4, 2008, the court ordered the parties to submit full briefing regarding trial counsel's (1) lack of qualifications and experience, (2) tactical decisions related to Hurlburt's motion to suppress inculpatory statements made to the police, and (3) advice to plead guilty to first degree murder prior to the trial court ruling on outstanding pretrial motions. The court has carefully and thoroughly reviewed the parties' briefs along with all relevant documents. For the reasons that follow, the court will deny Hurlburt's petition for writ of habeas corpus.

I.      **Background Facts**[1]

Judge Woelfel of the Court of Common Pleas of Snyder County, Pennsylvania, in ruling on Hurlburt's petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. Con. Stat. Ann. §§ 9541–9546, summarized the background to Hurlburt's petition as follows:

> Hurlburt is currently serving a life sentence for the murder of 78-year-old Martin Beachy on May 23, 1993. On that date, Hurlburt and his former co-defendant Sherry Lynn Ryan attacked Mr. Beachy, repeatedly striking his head with a claw hammer, slitting his throat, and inflicting several cut wounds around the orbits of his eyes. The Criminal Informations filed by the Snyder County District Attorney on August 30, 1993 charged Hurlburt with Criminal Homicide, Robbery, Aggravated Assault, Theft by Unlawful Taking and two counts of Criminal Conspiracy. With regard to the homicide charge, Hurlburt was charged with First Degree Murder, for which the Commonwealth sought the death penalty. Hurlburt was orally arraigned on these charges by the Court on August 30, 1993.
>
> On December 31, 1993, Hurlburt, through his counsel, Attorney Ann [sic] Shapiro of the Snyder County Public Defender's Office and Attorney Mark Lemon (court appointed), filed an Omnibus Pre-trial Motion. In addition, on January 28, 1994, the defense filed several motions in limine to prohibit and/or limit the Commonwealth's use and/or admission of specific items of physical evidence and to prohibit the death qualification of prospective jurors. We also note that the pretrial filings submitted by defense counsel included petitions requesting the appointment of a criminal investigator, a forensic pathologist, a forensic psychologist, a hair analysis expert, and a blood spatter expert to assist in the preparation of Hurlburt's defense.
>
> By our Order of January 31, 1994, we set a hearing date and time of February 16, 1994 at 4:00 p.m. for the purpose of addressing Hurlburt's motions. However, at that time we were informed by counsel that the Commonwealth and the defense had reached a plea agreement. We then took Hurlburt's guilty plea.
>
> At that proceeding Hurlburt entered a plea of guilty to the charge of first degree murder, in exchange for the Commonwealth's agreement to withdraw the aggravating circumstances in support of the death penalty and to "nol pros" the remaining robbery, aggravated assault, theft by

---

[1] The court described in significant detail the procedural history of this petition and Hurlburt's case in general in its Memorandum and Order dated August 4, 2008. (Doc. 65.) The court refrains from unnecessary repetition of this history and limits the background and review in this Memorandum in accordance with its discussion in the August 4 Memorandum and Order.

>unlawful taking, and criminal conspiracy charges. Given that both the District Attorney and counsel for Hurlburt represented to the Court that Hurlburt wished to be sentenced during the same proceeding—a representation affirmed by Mr. Hurlburt—we imposed a life sentence in a state correctional facility without parole.

(Doc. 36-3 at 1–2) (citation and footnote omitted).

After presenting this background, the PCRA court carefully described the applicable law and reviewed Hurlburt's contentions regarding (1) Shapiro and Lemon's ("counsel") lack of experience and qualifications, (2) counsel's incompetent approach to the suppression motion, (3) counsel's advice to plead guilty prior to the resolution of pending motions, and (4) several other alleged failures by counsel. (*Id.* at 3–11.)

The PCRA court found that Hurlburt's suggestion that counsel lacked the qualifications and experience to represent Hurlburt lacked "arguable merit." (*Id.* at 6.) In reaching this conclusion, the PCRA court deemed counsel's failure to satisfy the Philadelphia County Rules for Appointment of Counsel in capital cases not dispositive because the rules were not applicable to Snyder County nor promulgated at the time of their representation of Hurlburt. (*Id.* at 4–5.) Rather, the PCRA court engaged in a fact sensitive inquiry, which revealed that counsel represented Hurlburt in a manner that displayed proper qualification and experience as exhibited by their practical legal experience and pre-trial management of the case, including appropriate requests and motions. (*Id.* at 5–6.) Last, the PCRA court rejected Hurlburt's suggestion that counsel's simultaneous involvement in another complex criminal homicide prosecution undermined their representation of Hurlburt. (*Id.* at 5–6.)

Similiarly, the PCRA court found that Hurlburt failed to meet his burden of proving that counsel's approach to the suppression motion and advice to Hurlburt to plead guilty prior to the resolution of pending motions rose to the level of ineffectiveness. (*Id.* at 7.) As an initial matter, the PCRA court noted that it could not accurately assess counsel's tactical decisions regarding the suppression motion absent a ruling on the motion. (*Id.*) The PCRA court, then, evaluated Hurlburt's claims concerning counsel's performance with regard to the guilty plea by reviewing the totality of the circumstances to determine whether Hurlburt had proved by a preponderance of the evidence that counsel's tactical decision lacked a reasonable basis designed to serve Hurlburt's interests. (*Id.* at 8.) In substance, the PCRA court found that Hurlburt failed to prove that counsel acted without a reasonable basis and that counsel caused Hurlburt to plead guilty. (*Id.* at 8–9.) The PCRA court highlighted that the existence of damaging evidence against Hurlburt informed counsel's advice, including the nature of the wounds inflicted on the victim, statements to the police, and "the less than complimentary psychological profile" of Hurlburt. (*Id.*) While not explicitly mentioned, the PCRA court may also have taken into consideration lead counsel Shapiro's testimony that Hurlburt had constructed discrepant versions of his involvement in the murder and had admitted to counsel the nature of his involvement in the murder. (Doc. 15 at 182–83, PCRA Hearing Trans. of Proceeding) ("I recall Mr. Hurlburt describing hitting Mr. Beachy on the head with a hammer, Mr. Beachy falling. I remember him describing Sherry Ryan cutting around Mr. Beachy's eyes. I remember Mr. Hurlburt stating that he heard a gurgling noise, knelt down beside Mr. Beachy, and severed the artery in his neck with his fingers.") The PCRA court, with this factual

background in mind, concluded that Hurlburt had not overcome the burden of showing that under such circumstances counsel's decision to get the death penalty off the table amounted to advice not reasonably designed to serve Hurlburt's interests. (Doc. 36-3 at 9.)

The PCRA court reviewed several additional claims by Hurlburt that in substance bear weight on whether Hurlburt voluntarily, knowingly, and intelligently pled guilty. (*Id.* at 9–11.) In conducting its review, the PCRA court reviewed the transcript of the guilty plea and sentencing proceedings and found "that all three criteria were sufficiently satisfied." (*Id.* at 11.) As a close review of the transcript of that proceeding reveals, Judge Woelful carefully led Hurlburt through the plea colloquy—cautious to guarantee that Hurlburt understood his rights and the implications of his decision to plead guilty. (Doc. 5 ex. 3.) Among other things, the PCRA court specifically reviewed the facts underlying the charges, explained the rights Hurlburt was waiving, and discussed counsel's representation of Hurlburt. (*Id.*) Hurlburt even offered up additional thoughts on the plea and his counsel's representation. He stated: "I feel like a piece of shit. I feel I'm pretty fuckin lucky." (*Id.* at 19.) "I went there to save him and I ended up being the blade, you know. How the hell did that happen? I don't know. But it was done and I accept my punishment and I feel that people have been pretty lenient . . . ." (*Id.* at 19–20.) "I have three beautiful children and, you know, my life has stopped, I feel like dying today . . . I would rather die, but I have to think about my children, my family, my friends, all the people that it will affect. Enough people have been affected and hurt and tortured already." (*Id.* at 20.) "I thank everyone for the support, *especially*

*Anne*, and I put her through hell. And she's been right there for me." (*Id.*) (emphasis added.)

**II.     Standard of Review**

The court will not grant an application for writ of habeas corpus on behalf of a person held in custody pursuant to a state court judgment with respect to any claim adjudicated on the merits in state court proceedings unless adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law, or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *Harrington v. Gillis*, 456 F.3d 118, 124 (3d Cir. 2006). A state court unreasonably applies federal law where it "identifies the correct governing legal principles from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the petitioner's case." *Williams*, 529 U.S. at 413; *Harrington*, 456 F.3d at 124. In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

Under 28 U.S.C. § 2254(e)(1), a federal court must presume that state court findings are correct, and a habeas petitioner must present clear and convincing evidence to rebut this presumption of correctness. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. Cir. 2000). Indeed, "a federal court's review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## III.     Discussion

Notwithstanding many of the arguments presented by Hurlburt in his petition, statutory and case law necessarily limit the court's review. While the court recognizes ineffective assistance of counsel as a common and frequent basis for filing an application for a writ of habeas corpus, a petitioner may show such a violation of the Sixth Amendment only where (1) counsel's representation was deficient and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies where a petitioner suggests that his guilty plea resulted from ineffective assistance of counsel. *Hill v. Lockart*, 474 U.S. 52, 56 (1985); *Meyers v. Gillis*, 142 F.3d 664, 666 (3d Cir. 1998). Under *Strickland*, courts refrain from deeming counsel's performance deficient unless it "falls below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. To show prejudice, a petitioner "must show that it is reasonably probable that, but for the erroneous advice of his

trial counsel, he would not have not pled guilty and [would have] gone to trial." *Meyers*, 142 F.3d at 668. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694; *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992)).

With this standard in mind, the court has reviewed the PCRA court's decisions and finds that its determinations were neither contrary to nor an unreasonable application of the relevant legal standards. First, the court finds that the PCRA court did not unreasonably conclude that counsel's representation and tactical decisions did not lack a reasonable basis designed to serve Hurlburt's interests. Second, the court finds that even though the PCRA court's decision appears sparse and conclusory at points, the factual record overwhelmingly supports the conclusion that Hurlburt's decision to plead guilty—possibly saving himself from the agonizing psychological torture and ultimateness of the death penalty—was voluntary and intelligent. The court reviews both of these findings in more detail below.

### A. Deficient Performance

To succeed on his petition, Hurlburt must show that the PCRA court's determination that counsel's representation did not fall below an objective standard of reasonableness was contrary to or an unreasonable application of the relevant legal standards described above. Hurlburt puts forth three suggestions in hopes of meeting this significant burden: (1) counsel lacked sufficient qualifications and experience to represent Hurlburt in a complex death penalty case, (2) counsel failed to adequately represent Hurlburt during the suppression hearing, and (3) counsel unreasonably advised Hurlburt to plead guilty prior to the resolution of pending

motions, including a motion to suppress inculpatory statements and evidence. Having reviewed the relevant records, the court cannot conclude that the PCRA court's rejection of Hurlburt's suggestions constituted an unreasonable application of *Strickland*.

The court approached Hurlburt's claim that counsel lacked sufficient qualifications and experience to represent Hurlburt by engaging in a fact based inquiry and by rejecting Hurlburt's contention that counsel failed to meet the standards established in the Philadelphia Rules for Appointment of Counsel in capital cases. To begin with, the PCRA court correctly concluded that the Philadelphia standards developed subsequent to Hurlburt's plea were not dispositive in evaluating the competency of counsel. First, the standards did not apply at the time nor would they have been binding on a Snyder County public defender. Second, even if the PCRA court had given a more favorable read to Hurlburt's contention by citing lead counsel Shapiro's failure to satisfy the American Bar Association's *recommended* 1989 Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, *available at* http://www.abanet.org/deathpenalty/resources/home.shtml, the PCRA court would nonetheless have not been unreasonable in concluding that counsel was not ineffective. *See United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3d Cir. 1982) (holding that "the standard of adequacy of legal services . . . is the exercise of the customary skill and knowledge which normally prevails at the time and place").

After graduating from law school, Shapiro served for two years as a law clerk to the Honorable Malcolm Muir followed by a clerkship with Judge Zoran Popovich of the Pennsylvania Superior Court. During her representation of

Hurlburt, Shapiro served as a Chief Public Defender for Snyder County. Nonetheless, Shapiro recognized the significance of the case and filed a petition for appointment of co-counsel.  The trial court granted the petition and appointed attorney Mark Lemon as co-counsel, a practicing attorney for approximately seven years with trial experience in vehicular homicide cases as well as several other complex criminal matters.  In addition, Shapiro sought leave to employ special investigator Skip Gochenour, a well-known and respected investigator whom at the time of Hurlburt's case had already worked on over 200 murder investigations.  Moreover, Shapiro's approach to the case indicates a significant level of competency.  She filed appropriate motions and requests throughout the pre-trial phase, including an Omnibus Pretrial motion and several motions in limine.  Shapiro requested appointment of a criminal investigator, a forensic psychologist, a hair analysis expert, and a blood spatter expert to assist in preparation of Hurlburt's defense.  Looking at the totality of the circumstances, Shapiro appears to have been a competent and qualified attorney.  *See Riley v. Taylor*, 277 F.3d 261, 306–307 (3d Cir. 2001) (affirming finding that counsel was not ineffective in death penalty case where no co-counsel was appointed, counsel did not seek an investigator, counsel spent only 14 hours preparing for the penalty phase of the trial, and counsel's experience was otherwise "not comforting").

       The PCRA court also found that counsel "was not incompetent in their approach to the suppression motion."  The PCRA court reasoned that it could not say that counsel ineffectively represented Hurlburt with regard to the motion without the trial court having ruled on the motion.  While this tautology may raise the eyebrow of most students of philosophy, the argument does not suggest an

unreasonable application of *Strickland*, especially when juxtaposed against Hurlburt's grievances.  Hurlburt takes issue with counsel's decision not to call him as a witness at the suppression hearing and not to pursue the argument that Hurlburt had used marijuana on the day prior to when he had made the confession.  Shapiro testified that she did not believe Hurlburt would make a convincing witness.  Regardless of the basis for Shapiro's advice, this tactical decision does not provide a basis for finding Shapiro's representation deficient.  *See, e.g.*, *Saranchak v. Beard*, 538 F. Supp. 2d 847, 868 (M.D. Pa. 2008) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .") (quoting *Strickland*, 466 U.S. at 690)).

Similarly, the court does not find that the PCRA court's determination that counsel had no reasonable basis for advising Hurlburt to plead guilty prior to the resolution of pending motions constituted an unreasonable application of *Strickland*.  Even though the PCRA court addresses the issue in a curt and conclusory manner, the record so undisputably undermines Hurlburt's argument that the court cannot find the PCRA court's finding unreasonable.  Hurlburt, having displayed a propensity for dishonesty, faced the ultimate and irrevocable punishment of death.  Upset by his actions, Hurlburt expressed a desire to avoid death, because of the negative impact receiving this punishment might have on his children.  Cognizant of his prior confession of guilt, aware of damaging evidence linking Hurlburt to the murder or otherwise contradicting his version(s) of the story, knowing that Hurlburt's co-defendant could take the stand against him, counsel made a tactical decision to advise Hurlburt to accept the government's offer to take the death penalty off the table.  This tactical advice reasonably and significantly

served Hurlburt's interest in protecting his children and avoiding the death penalty. With so much damaging evidence against Hurlburt and the belief that the motion to suppress would not have a dispositive effect on the case, counsel made a tactical decision. The PCRA court correctly refrained from second guessing this decision and this court will do the same. *See Saranchak*, 538 F. Supp. 2d at 868. Accordingly, Hurlburt has failed to show that the PCRA court's determination that counsel's actions did not lack a reasonable basis constituted an unreasonable application of the deficiency prong of *Strickland*.

### B. **Prejudice**

Even if the court assumed counsel performed deficiently, the PCRA court did not unreasonably conclude that counsel's tactical decisions prejudiced Hurlburt. To find otherwise would require Hurlburt to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hill*, 474 U.S. at 57. In the context of a plea agreement, this means that Hurlburt "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* As a logical matter, this "but for" test implies that "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary, [unintelligent], or unknowing plea." *See Commonwealth v. Allen*, 732 A.2d 582, 587 (Pa. 1999).

A review of the thorough and extensive plea and sentencing hearing reveals that Hurlburt voluntarily, knowingly, and intelligently pled guilty. In fact, several exclamations by Hurlburt during the hearing support the inference that his

desire to avoid the death penalty combined with his actual participation in the murder primarily motivated his decision to accept the plea agreement. Nonetheless, Hurlburt attempts to mitigate this obvious conclusion by insisting that he lied throughout the hearing. The court does not find comfort in this admission of perjury. *See Commonwealth v. Barnes*, 687 A.2d 1163, 1167 (Pa. Sup. Ct. 1996) ("A defendant may not assert grounds for withdrawing the plea that contradict statements made when he pled guilty.")

       Aside from Hurlburt's blanket assertion that he lied throughout the duration of the hearing, his remaining arguments rest on credibility determinations, which the PCRA court rejected and to which this court must defer. For example, Hurlburt claims (1) that counsel did not inform him of the difference between first and third degree murder, (2) that he was offered a plea agreement of third degree murder, (3) that he believed third degree murder is a more severe crime than first degree murder because three is greater than one, and (4) that the plea agreement included a guarantee of commutation. Shapiro and Lemon both testified under oath that these claims were false, and this court may not upset these credibility determinations. Hurlburt's remaining claims are frivolous. Accordingly, the court finds that the PCRA court did not unreasonably apply *Strickland* to reach its conclusion that Hurlburt failed to prove that but for counsel's representation he would not have pled guilty. Accordingly, the court finds no reason to grant Hurlburt's application for writ of habeas corpus.

**IV.** **Conclusion**

For the reasons outlined above, Hurlburt's application for writ of habeas corpus is denied.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: October 20, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EDGAR MARTIN HURLBURT, Jr.,** : | **CIVIL NO. 1:CV-03-0665** |
| Petitioner : | |
| : | **JUDGE SYLVIA H. RAMBO** |
| v. : | |
| **RAYMOND LAWLER,** : | |
| Respondent : | |

## O R D E R

For the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition under 28 U.S.C. § 2254 is **DENIED**.

2) A certificate of appealability is **DENIED**.

3) The Clerk of Court shall mark this matter **CLOSED**.

                                                    s/Sylvia H. Rambo
                                                    SYLVIA H. RAMBO
                                                    United States District Judge

Dated: October 20, 2008.